**BRADY LAW, CHARTERED**
**Michael G. Brady, ISB #1293**
**Oscar S. Klaas, ISB #7946**
**St. Mary's Crossing**
**2537 W. State Street, Suite 200**
**Boise, ID 83702**

**TELEPHONE:  (208) 345-8400**
**FACSIMILE:  (208) 322-4486**

Attorneys for Plaintiff Sandra L. McIntier

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SANDRA LEE McINTIER,<br><br>Plaintiff,<br><br>v.<br><br>COLLECTION TECHNOLOGY, INC., a California Corporation, d/b/a CTi; ADAM MONTOYA, an individual; MICHAEL SMITH; and MICHAEL DOE, an individual,<br><br>Defendants. | Case No. 1:10-cv-338<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## PRELIMINARY STATEMENT

1.     This action for damages under the Fair Debt Collection Practices Act and the

California Rosenthal Fair Debt Collection Practices Act is based on Defendants' unfair, false, and

**COMPLAINT AND DEMAND FOR JURY TRIAL – Page 1**
0816.0001

deceptive acts in an attempt to collect a debt arising from Plaintiff's student loans by garnishing Plaintiff's wages in violation of 34 C.F.R. § 682.405 et seq.

## JURISDICTION & VENUE

2.     Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), and to 28 U.S.C. § 1367 for pendent state law claims.

3.     This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and the California Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.32 ("RFDCPA") in their illegal efforts to collect a consumer debt.

4.     Venue is proper in this District because the acts and transactions occurred in Idaho, Plaintiff resides in Idaho, and Defendants transact business and are licensed debt collectors in Idaho.

## PARTIES

5.     Plaintiff Sandra Lee McIntier ("Plaintiff") is a natural person who resides in the City of Boise, County of Ada, State of Idaho, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

6.     Defendant Collection Technology, Inc ("Defendant CTi") is a foreign corporation and a collection agency operating from an address of 1200 Corporate Center Drive Suite 325, Monterey Park, California, with a branch office located at 910 B North Mountain Avenue, Ontario, California and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and a third-party servicer of defaulted student loans who is required to comply with the provisions of the Family Federal Educational Loan Program ("FFEL"), 34 C.F.R. § 682 et seq., in the course of its student loan collection activities, and is subject to the laws of the State of California.

**COMPLAINT AND DEMAND FOR JURY TRIAL – Page 2**
0816.0001

7.      Defendant Adam Montoya ("Defendant Montoya") is a natural person employed by Defendant CTi as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

8.      Defendant Michael Smith ("Defendant Smith") is a natural person employed by Defendant CTi as a "Garnishment Department Manager" and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

9.      In or around February, 1997, Plaintiff incurred a financial obligation that was primarily for personal, family or household purposes, that went into default for late payment, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, two Stafford student loan in a combined approximate amount of $6,625.00 (the "debt" or "student loans"), utilized by Plaintiff to attend the American Institute of Health Technology(aka Apollo College).

10.     On September 2, 1997, Plaintiff entered "graduate status" on her student loans.

11.     Sometime thereafter, Plaintiff's loans entered default status, which is defined in 34 C.F.R. § 682.2(b) as failure of the borrower to make a student loan payment for 270 consecutive days.

12.     Sometime in or around 2009, the Plaintiff's alleged debt was consigned, placed or otherwise transferred to Defendants for collection from Plaintiff, when thereafter Plaintiff received collection communications from Defendants in an attempt to collect this debt.

13.     The current outstanding principal amount of the combined debt is $4,460.00 ($2,693.00 on Plaintiff's unsubsidized Stafford loan; $1,767.00 on Plaintiff's subsidized Stafford loan).

**COMPLAINT AND DEMAND FOR JURY TRIAL – Page 3**
0816.0001

14.    On May 28, 2008, Plaintiff received a discharge order from the United States Bankruptcy Court, District of Idaho under Chapter 7 of the U.S. Bankruptcy Code (the "bankruptcy discharge").

15.    Sometime thereafter, Plaintiff began receiving calls from Defendant CTi regarding her student loans.

### *Initiation of Wage Garnishment*

16.    In or around October, 2009, Plaintiff received a call from the human resources department of her employer regarding a notice Plaintiff's employer had received to garnish fifteen percent (15%) of Plaintiff's wages to pay for her defaulted student loans.

17.    Plaintiff had not received any notice of intent to garnish wages prior to the notification from Plaintiff's employer.

18.    Thereupon, Plaintiff called Defendant CTi and spoke with Defendant Montoya to determine the nature and reason of the wage garnishment.

19.    Plaintiff asked Defendant Montoya if Plaintiff could make payment arrangements that would end the need for the wage garnishment.

20.    Plaintiff asked if Defendants had authority to lower the percentage of her wages being garnished.

21.    Plaintiff asked if Defendants were willing to lower the percentage of her wages being garnished to make the garnish amount reasonable and affordable to Plaintiff.

22.    Defendant Montoya informed Plaintiff that an account must be garnished for nine months once garnishment has been initiated and, therefore, the garnishment would not be cancelled nor altered at that time.

**COMPLAINT AND DEMAND FOR JURY TRIAL – Page 4**
0816.0001

23. Defendant Montoya informed Plaintiff that during those nine months, Plaintiff must make nine consecutive monthly "voluntary payments" of $72.00 in addition to the garnishment in order to qualify for a rehabilitation agreement under the FFEL.

24. Defendant Montoya did not ask Plaintiff to provide any documentation pertaining to Plaintiff's financial circumstances, like reasonable and necessary expenses including, but not limited to, housing, utilities, food, medical costs, work-related expenses, dependent care costs in order to determine a reasonable and affordable repayment amount based on Plaintiff's total financial circumstances, as required by 34 C.F.R. § 682.405(b)(1)(iii)(A)-(C) to determine whether paying $72.00 in addition to the garnishment was reasonable and affordable for Plaintiff.

25. The "voluntary payment" amount of $72.00 was arbitrary, unreasonable, not affordable to Plaintiff and an illegal attempt to collect amounts in excess of the amount allowed by law in violation of the FFEL and 15 U.S.C. § 1692f(1).

26. The garnishment of Plaintiff's wages commenced on or about November 15, 2009.

27. The garnishment amount was, and remains, fifteen percent (15%) of Plaintiff's disposable income.[1]

### December 2009 Telephone Conversation

28. Sometime in or around December 2009, Plaintiff called Defendant CTi and spoke once again with Defendant Montoya.

29. Plaintiff asked Defendant Montoya if there was any way to stop the wage garnishment.

---

[1] Generally, an employee's "disposable income" or "disposable earnings" is the amount of earnings left after legally required deductions (e.g., federal, state and local taxes; Social Security; unemployment insurance; and state employee retirement systems) have been made. Deductions not required by law (e.g., union dues, health and life insurance, and charitable contributions) are not subtracted from gross earnings when the amount of disposable earnings for garnishment purposes is calculated. See 29 C.F.R. 870.

30.     Plaintiff asked Defendant Montoya if there was any way to suspend the wage garnishment.

31.     Plaintiff asked Defendant Montoya if there was any way to reduce the amount of the wage garnishment in order to make the garnishment amount reasonable and affordable to Plaintiff.

32.     Plaintiff informed Defendant Montoya that as a result of the wage garnishment, Plaintiff had been unable to meet Plaintiff's other financial obligations, such as bills and rent.

33.     Plaintiff informed Defendant Montoya that as a result of the wage garnishment, Plaintiff was facing the real possibility of becoming homeless due to Plaintiff's inability to pay rent after the wage garnishment was taken out of Plaintiff's pay check.

34.     Defendant Montoya responded to Plaintiff's requests for garnishment reduction, suspension and/or termination by informing Plaintiff that unless Plaintiff made payments in addition to the wage garnishment, Defendants could do nothing.

35.     Defendant Montoya responded to Plaintiff's requests for garnishment reduction, suspension and/or termination by informing Plaintiff that unless Plaintiff made payments in addition to the wage garnishment, Defendants would do nothing.

36.     Defendant Montoya responded to Plaintiff's request to reduce the garnishment to a reasonable amount by informing Plaintiff that the Defendants were permitted by law to take 15% of Plaintiff's disposable income.

37.     Due to Plaintiff's income being garnished, Plaintiff was forced to seek assistance from the local food bank and the Society of St. Vincent de Paul, among other charitable organizations for basic necessities for Plaintiff and her daughter.

38.    Due to the garnishment, Plaintiff has been unable to pay her power bill to heat her home and has been forced to seek payment assistance for such bills.

39.    On February 5, 2010, Plaintiff's minor daughter, over whom Plaintiff had custody, reached 18 years of age, and Plaintiff no longer received child support payments from Plaintiff's ex-husband. This constituted a significant change in Plaintiff's monthly income.

40.    On February 5, 2010, Plaintiff's landlord served Plaintiff with a three day notice of eviction due to failure to timely pay rent.

41.    Plaintiff has been forced to make alternate payment arrangements with her landlord, and as a result has incurred late fees and/or charges for her rent in the amount of $35 per month.

### *March 23, 2010 Telephone Conversation*

42.    On March 23, 2010 Plaintiff called Defendant CTi and spoke with Defendant Montoya once again to attempt to have the garnishment percentage or amount lowered and/or make payment arrangements other than wage garnishments.

43.    Plaintiff informed Defendant Montoya the wage garnishment was "killing her" or words similar to that effect.

44.    Plaintiff informed Defendant Montoya that as a result of the wage garnishment, Plaintiff's landlord had issued a notice of eviction to Plaintiff because Plaintiff could no longer pay her rent due to the wage garnishment.

45.    Plaintiff asked Defendant Montoya about a rehabilitation agreement for her defaulted student loans, using the specific term "rehabilitate."

46. Defendant Montoya informed Plaintiff that the only way for Plaintiff to have the garnishment discontinued was to make "voluntary payments" of $65.00 per month for nine consecutive months in addition to the garnishment.

47. Defendant Montoya informed Plaintiff that the only way for Plaintiff to qualify for a loan rehabilitation agreement was to make "voluntary payments" in the arbitrary amount of $65.00 per month for nine consecutive months in addition to the garnishment.

48. Defendant Montoya did not ask Plaintiff to provide any documentation pertaining to Plaintiff's financial circumstances, like reasonable and necessary expenses including, but not limited to, housing, utilities, food, medical costs, work-related expenses, dependent care costs in order to ascertain a reasonable and affordable payment amount for Plaintiff, as required by 34 C.F.R. § 682.405(b)(1)(iii)(A)-(C) to determine whether paying $65.00 in addition to the garnishment was reasonable and affordable for Plaintiff.

49. The "voluntary payment" amount of $65.00 was arbitrary, unreasonable, not affordable to Plaintiff and an illegal attempt to collect amounts in excess of the amount allowed by law in violation of the FFEL and 15 U.S.C. § 1692f(1).

50. Defendant Montoya offered a settlement amount of $4,411.00 to Plaintiff for payment in full of the student loans.

51. Plaintiff informed Defendant Montoya that there was no way Plaintiff could afford such a settlement because her wages were being garnished.

52. Defendant Montoya then transferred Plaintiff to a CTi supervisor, Defendant Smith.

53. Defendant Smith identified himself to Plaintiff as the "Garnishment Department Manager."

54.     Plaintiff informed Defendant Smith of the financial, emotional, and physical difficulties Plaintiff was suffering from as a direct result of the garnishment which have been set forth above.

55.     Plaintiff specifically expressed to Defendant Smith Plaintiff's desire to enter into a rehabilitation agreement for her defaulted loans, using the specific term "rehabilitation."

56.     Defendant Smith informed Plaintiff that there was no way Defendants could temporarily suspend the wage garnishment.

57.     Defendant Smith informed Plaintiff that there was no way to temporarily reduce the amount of the wage garnishment.

58.     Defendant Smith informed Plaintiff that the only way to reduce the amount of the wage garnishment was to make "voluntary payments" in addition to the amounts being garnished from Plaintiff's wages, but did not provide Plaintiff a specific amount nor inform plaintiff how that amount would be determined.

59.     Defendant Smith informed Plaintiff that Plaintiff could request a hearing with the Department of Education to either cease the garnishment or reduce the amount of the garnishment by sending request and a financial disclosure statement to the Department of Education.

### *Hearing Regarding Plaintiff's Objection to Wage Garnishment*

60.     On April 8, 2010, Plaintiff submitted a Request for Hearing with the U.S. Department of Education, along with a Financial Disclosure Statement objecting to the wage garnishment based on the grounds the wage garnishment created a financial hardship to Plaintiff and her dependents.

61.     On May 5, 2010, Defendant CTi contacted Plaintiff and left a voicemail message.

**COMPLAINT AND DEMAND FOR JURY TRIAL – Page 9**
0816.0001

62.    In the voicemail, the caller identified himself as a representative of CTi named "Michael." "Michael" left a reference number 440274 and stated the call was in regards documents he had received in relation to Plaintiff's Request for Hearing and Financial Disclosure Statement filed with the Department of Education and asked Plaintiff to contact him at (800) 983-4284, extension 1101.

63.    Based upon Plaintiff's prior telephone conversation, Plaintiff believes and alleges that the CTi representative "Michael" was Defendant Smith.

64.    "Michael" did not identify himself as a debt collector in the voice mail message.

65.    By failing to identify himself as a debt collector, "Michael," and thereby Defendant CTi, violated 15 USC § 1692e(11).

66.    On May 14, 2010, Plaintiff called CTi and spoke with Defendant Smith regarding the status of Plaintiff's Request for Hearing.

67.    Defendant Smith asked Plaintiff to call back on May 21, 2010 to inquire about a final determination.

68.    Plaintiff asked Defendant Smith regarding a "rehabilitation agreement" in the event that the request for hearing declined to make changes to the garnishment.

69.    Defendant Smith stated that Plaintiff would have to make payments of $65.00 in addition to the garnishment to rehabilitate the loan.

70.    Defendant Smith did not ask Plaintiff to provide any documentation pertaining to Plaintiff's financial circumstances, like reasonable and necessary expenses including, but not limited to, housing, utilities, food, medical costs, work-related expenses, dependent care costs in order to determine a reasonable and affordable repayment amount based on Plaintiff's total financial

circumstances, as required by 34 C.F.R. § 682.405(b)(1)(iii)(A)-(C) to determine whether paying $72.00 in addition to the garnishment was reasonable and affordable for Plaintiff.

71.     The "voluntary payment" amount of $65.00 was arbitrary, unreasonable, not affordable to Plaintiff and an illegal attempt to collect amounts in excess of the amount allowed by law in violation of the FFEL and 15 U.S.C. § 1692f(1).

### Termination of Wage Garnishment

72.     On or about May 27, 2010, Plaintiff called Defendant CTi and spoke with Defendant Smith regarding the determination of Plaintiff's Request for Hearing.

73.     Defendant Smith informed Plaintiff that her request to terminate the wage garnishments had been granted, and therefore, the wage garnishment would cease.

74.     This determination was made less than nine months after the initiation of the wage garnishment against Plaintiff, contrary to Defendants' numerous representations that the wage garnishment could not be ceased or altered until the wage garnishment had been in place for nine months.

75.     Defendant Smith indicated that Plaintiff was eligible to enter into a rehabilitation agreement; this was less than nine months after the initiation of the wage garnishment.

### Defendants' Attempt to Delay Termination of the Wage Garnishment

76.     On several occasions prior to June 1, 2010, Plaintiff spoke with Defendant Smith regarding whether notice of the lifting of the wage garnishment would be supplied to Plaintiff's employer before payroll was processed by Plaintiff's employer on June 1, 2010.

77.     Defendant Smith assured Plaintiff that notice of the termination of the garnishment would be provided to Plaintiff's employer prior to payroll processing on June 1, 2010 by either mail or fax.

78.     On June 1, 2010, Plaintiff spoke with Defendant Smith regarding notice to Plaintiff's employer of the garnishment being terminated and the June 1, 2010 payroll processing.

79.     Defendant Smith informed Plaintiff that a notation had been placed on her account for the Department of Education to fax the notice of termination of the garnishment and that the Department of Education would have to handle the notification.

80.     Defendant Smith agreed to call Plaintiff's employer to explain the situation regarding the termination of the garnishment.

81.     On June 1, 2010, Defendant Smith spoke with a representative of Plaintiff's employer and informed that representative that Defendants legally could not stop the garnishment via telephone.

82.     Based on that notification, Plaintiff's employer processed payroll and the garnishment amount was withheld from Plaintiff's paycheck.

83.     On June 2, 2010, Plaintiff spoke with a representative of the Department of Education via telephone regarding the garnishment termination notification process. The Department of Education representative informed Plaintiff that a decision letter regarding terminating the garnishment had been issued and sent to Plaintiff's employer on May 29, 2010.

84.     The Department of Education representative informed Plaintiff that there was no notation on Plaintiff's account to fax the notification to Plaintiff's employer, and if such a notation had been made, the notification would have been faxed.

85.     At Plaintiff's request, the Department of Education did fax a notification to Plaintiff's employer on or about June 3, 2010; Plaintiff's employer then issued a second check to Plaintiff in an amount equal to the garnishment.

86.     The above listed debt collection activities regarding the termination notice to Plaintiff's employer constitutes multiple and numerous violations of the FDCPA, including 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), 1692e(8), 1692f, and 1692f(1).

### *Defendants' Illegal Debt Collection Efforts in Forming a Loan Rehabilitation Agreement*

87.     On or about June 24, 2010, Plaintiff spoke via telephone with Defendant Smith regarding establishing a reasonable and affordable rehabilitation payment plan.

88.     Defendant Smith informed Plaintiff the terms of the rehabilitation agreement would require Plaintiff to pay $60.00 per month for nine consecutive months to bring the loans out of default, payment to be made via automatic withdrawal from Plaintiff's banking account on the twenty-third day of each month.

89.     Based on Plaintiff's current and then financial circumstances, $60.00 is not a reasonable and affordable amount for Plaintiff.

90.     Defendant Smith stated that a payment of less than 1.2% of the balance of the loan would not get the loan out of default.

91.     The payment amount of $60.00 required by Defendant Smith is more than 1.2% of the total outstanding balance of Plaintiff's loans, which is approximately $4,460.00.

92.     There is no requirement to pay at least 1.2% of the loan balance in order to rehabilitate a defaulted student loan under 34 C.F.R. § 682.405, the Federal Regulation concerning student loan rehabilitation, or the FFEL.

93.     Defendants' assertion that Plaintiff must pay at least 1.2% of the outstanding loan balance in order to rehabilitate Plaintiff's loan is a required minimum payment amount in violation of the FFEL, specifically, 34 C.F.R. § 682.405(b)(1)(iii)(B) and a false and deceptive means of collecting a debt, in violation of the FDCPA.

94.     The payment amount of $60.00 was arbitrary, unreasonable, not affordable to Plaintiff and as such constitutes an illegal attempt to collect amounts in excess of the amount allowed by law in violation of the FFEL and 15 U.S.C. § 1692f(1).

95.     34 C.F.R. § 682.405 does not require nine consecutive payments in order to rehabilitate a loan, rather 34 C.F.R. § 682.405 requires at least nine payments be received within 20 days of the due date for payment within a ten month period commencing on the due date for the first payment.  34 C.F.R. § 682.405(a)(2)(i), (a)(2)(i)(B), (b)(1), (b)(1)(ii).

96.     There is no statutory or regulatory requirement that payment must be made via automatic account withdrawal.

97.     The above listed debt collection activities regarding the Plaintiff's rehabilitation agreement constitutes multiple and numerous violations of the FFEL, the FDCPA, and the RFDCPA, including 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), 1692f, and 1692f(1).

### *Respondeat Superior Liability*

98.     The acts and omissions of Defendant Montoya, Defendant Smith, and the other debt collectors employed as agents by Defendant CTi who communicated with Plaintiff as more further

described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant CTi.

99.    The acts and omissions by Defendant Montoya, Defendant Smith, and other debt collectors employed as agents of Defendant CTi were incidental to, or of the same general nature as, the responsibilities Defendant Montoya and Defendant Smith were authorized to perform by Defendant CTi as Defendant CTi's agents in collecting consumer debts.

100.    By committing these acts and omissions against Plaintiff, Defendant Montoya Defendant Smith, and other debt collectors employed as agents of Defendant CTi were motivated to benefit their principal, Defendant CTi.

101.    Defendant CTi is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA, the RFDCPA, and the FFEL, in their attempts to collect this debt from Plaintiff.

### *Summary*

102.    Defendants' numerous and multiple refusals to allow Plaintiff to enter into a rehabilitation agreement pursuant to the FFEL, specifically 34 C.F.R. § 682.405 et seq., without first making nine consecutive "voluntary payments" in addition to the amount already being garnished from Plaintiff's wages was an unfair, false, and deceptive act in violation of the FFEL and in violation of numerous and multiple provisions of the FDCPA, including, but not limited to, each and every one of the above-cited provisions of the FDCPA, including 1692e, 1692e(2), 1692e(8), 1692e(10), and 1692f, amongst others.

103.    Defendants' multiple and numerous false representations to Plaintiff that the wage garnishment must be in place for at least nine months were unfair, false, and deceptive acts in violation of the FFEL and in violation of numerous and multiple provisions of the FDCPA, including, but not limited to, each and every one of the above-cited provisions of the FDCPA, including 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), 1692e(10), and 1692f, amongst others.

104.    Defendants' arbitrary payment amounts of $60.00, $65.00 and $72.00, calculated without consulting Plaintiff in order to obtain documentation of Plaintiff's current income, expenses, and other economic circumstances in determining an agreed upon reasonable and affordable repayment amount was a false and deceptive collection practice, as well as unfair to the Plaintiff, and done in violation of the FFEL, 34 C.F.R. § 682.405, and in violation of numerous and multiple provisions of the FDCPA including, 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), 1692e(10), and 1692f, amongst others.

105.    Defendants' insistences that additional "voluntary payments" were necessary in order to enter into a rehabilitation agreement or to reduce the wage garnishment amount and/or percentage were attempts to collect amounts incidental to the principle obligation in excess of the maximum collection amount allowed by law (which is 15% of Plaintiff's disposable income) in violation of the FDCPA, specifically, 15 U.S.C. §§ 1692f and 1692f(1), and the FFEL.

106.    The failure of a CTi representative "Michael" to identify himself as a debt collector was a false, deceptive, or misleading representation or means in connection with the collection of a debt and a violation of the FDCPA, specifically 15 USC § 1692e(11).

107.    Defendants' false and misleading representations to Plaintiff regarding the notation on her account to have the garnishment termination notice faxed to Plaintiff's employer,

and Defendants' collection of a wage garnishment after a termination notice had been entered were an unfair, false, and deceptive acts in violation of the FFEL and in violation of numerous and multiple provisions of the FDCPA, including, but not limited to, each and every one of the above-cited provisions of the FDCPA, including 1692e, 1692e(2), 1692e(8), 1692e(10), 1692f and 1692f(1), amongst others.

108.   Defendants' false and misleading representations to Plaintiff regarding the amount, method, requirements for a rehabilitation agreement were an unfair, false, and deceptive acts in violation of the FFEL and in violation of numerous and multiple provisions of the FDCPA, including, but not limited to, each and every one of the above-cited provisions of the FDCPA, including 1692e, 1692e(2), 1692e(8), 1692e(10), 1692f and 1692f(1), amongst others

109.   Defendants' false, deceptive, or otherwise misleading representation or means in connection with the collection of this alleged debt recounted above, were also communications in violation of the RFDCPA, specifically Cal. Civ. Code § 1788.17.

110.   As a direct result of Defendants' actions and omissions in violation of the FDCPA, RFDCPA, and FFEL, Plaintiff has suffered actual damages in the form of excessive wage garnishment and correlated loss of income; initiation of eviction proceedings against Plaintiff; fees for late payment of rent; inability to adequately provide for food and necessities for Plaintiff and Plaintiff's then minor daughter; inability to pay outstanding medical bills, subsequent late charges, and collection fees; inability to pay outstanding taxes owed and subsequent late fees.

111.   As a direct result of Defendants' actions and omissions in violation of the above-cited provisions of the FFEL, the FDCPA and the RFDCPA, Plaintiff has suffered actual damages due to the severe emotional distress and suffering in the forms of loss of sleep, increased anxiety,

depression, fear, embarrassment, humiliation, stress, feelings of hopelessness, and other related negative emotional and physical symptoms.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692 et seq.

112.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

113.    The foregoing acts and omissions of each and every Defendant constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

114.    As a result of each and every Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant herein.

### COUNT II

### VIOLATION OF THE
### ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT
### CALIFORNIA CIVIL CODE §§ 1788-1788.32 (RFDCPA)

115.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

116.    The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the RFDCPA as to this Plaintiff, including but not limited to Cal. Civ. Code § 1788.17, amongst others.

117.     As a result of each and every Defendant's violations of the RFDCPA, Plaintiff is entitled to her actual damages pursuant to California Civil Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to California Civil Code § 1788.30(b); and additional statutory damages of up to $1,000 pursuant to California Civil Code § 1788.17; and reasonable attorney's fees and costs pursuant to California Civil Code § 1788.30(c), from each and every Defendant.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury pursuant to Fed.R.Civ.P. 38.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant for:

## COUNT I
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 et seq.

- An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

- An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A);

- An award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff; and

- Such other and further relief as may be just and proper.

## COUNT II
## VIOLATIONS OF THE
## ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT
## CALIFORNIA CIVIL CODE §§ 1788-1788.32 (RFDCPA)

- An award of actual damages pursuant to California Civil Code § 1788.30(a) in a reasonable an amount to be determined at trial;

- An award of statutory damages of $1,000.00 pursuant to California Civil Code § 1788.30(b);

- An award of statutory damages of $1,000.00 pursuant to California Civil Code § 1788.17 and 15 U.S.C. §1692k(a)(2)(A);

- An award of costs of litigation and reasonable attorney's fees pursuant to California Civil Code § 1788.30(c); and

- For such other and further relief as may be just and proper.

DATED this ___ day of July, 2010.

BRADY LAW, CHARTERED

By:   Oscar S. Klaas,
Attorneys for Plaintiff Sandra L. McIntier

**COMPLAINT AND DEMAND FOR JURY TRIAL – Page 20**
0816.0001

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF IDAHO        )
                             ) ss

COUNTY OF ADA       )

Plaintiff Sandra Lee McIntier, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

*Sandra R McIntier*
Sandra Lee McIntier

Subscribed and sworn to before me this ___1___ day of ~~May~~ July, 2010

*Os Klaas*
Notary Public

My commission expires ___Nov 2015___.

OSCAR S. KLAAS
NOTARY
PUBLIC
STATE OF IDAHO

**Complaint and Demand for Jury Trial– Page 15**
0816.0001